DAVIDSON COUNTY v. BLACKWELL.—82 S. W. (2d) 872.

Middle Section. November 16, 1934.

Petition for Certiorari denied by Supreme Court, June 10, 1935.

48

Lurton Goodpasture, of Nashville, for Blackwell.
Horace Osment, of Nashville, for Davidson County.

DeWITT, J. This action was brought by H. L. Blackwell, administrator of the estate of Ferdie Blackwell, against Davidson county for damages for the death of Ferdie Blackwell on December 17, 1931, while engaged in the performance of his duties as an employee of the Davidson county highway department. The deceased was riding upon a steam shovel, which was being transported upon a trailer drawn by two trucks from a place where the steam shovel had been used in highway construction by the highway department, toward a place on the Buena Vista Highway in Davidson county, where it was to be likewise used. When a bridge over a creek on highway No. 12 was reached, the bridge broke down under the weight of the steam shovel and trailer, throwing them down into the creek and killing Ferdie Blackwell.

Upon a trial to a jury, a verdict for the administrator for $7,500 was rendered against the county, and judgment was entered thereon. The county of Davidson has appealed in error to this court.

The declaration is in three counts. In the first count it was averred that the transportation of the steam shovel and trailer constituted a public nuisance endangering the life of the deceased, as well as the lives of other persons; that it endangered the property of the state of Tennessee by its unlawful use and negligent operation; that the defendant was negligent in transporting the machinery at a rate of speed in excess of nine miles per hour, and in failing to observe the ordinary precaution of inspecting the bridge before it would be crossed.

In the second count, after adopting the averments made in the first count, it was averred that highway No. 12 was a state highway within the meaning of section 1 of chapter 130 of the Public Acts of 1925, which provides, in effect, that such vehicles using the public thoroughfares shall have a maximum weight of ten tons, and making a violation of the same a misdemeanor; and that the combined weight of the trailer and the steam shovel or excavating machine was approximately 25 tons. (Under this count it is in-

sisted that the provision of said act (section 6) which excluded Davidson county from the operation of the act was unconstitutional.)

In the third count (which was added by way of amendment), after adopting the averments contained in the first and second counts, it was charged that the bridge itself was defective; that this condition was known to the county through its agents and officials, and was unknown to the deceased; that said bridge constituted a public nuisance; and that the county through its agents and officials had failed in the performance of an alleged duty to warn the deceased of the danger incident to crossing said bridge with said heavy machinery, and that as a result thereof he was led into a dangerous death trap to the loss of his life.

Before the third count was added, Davidson county interposed a demurrer, and it was overruled. The grounds of the demurrer were that the county was not liable for acts of nonfeasance of its officers, agents, or employees in the performance of their duties as representatives of the county engaged in the performance of a governmental function; that the declaration showed that the plaintiff's intestate assume the risk and was guilty of contributory negligence barring a recovery; and that the county was not responsible in damages for the acts of its employees in creating a dangerous condition or status in one of its roads.

■■ The demurrer was properly overruled because it did not adequately reach the question whether or not the county had created a nuisance. This question is, however, presented under the assignment that the trial judge erred in refusing, at the close of the evidence, to direct a verdict for the defendant. We will say here that the charge made in the third count, that the bridge was defective, presented no cause of action against the county; and after the motion for a directed verdict was overruled, and the court had charged the jury, the court should have given in instruction to the jury the defendant's special request No. 4, in which this proposition was directly and correctly stated. It is well settled in this state that in the establishment and maintenance of roads and bridges a county exercises the functions of sovereignty; and that it is not liable in damages for injuries or death caused by a vehicle breaking through an unsafe bridge on its highway. Binkley v. Hughes (Tenn. Sup.), 73 S. W. (2d), 1111; Carothers v. Shelby County, 148 Tenn., 185, 253 S. W., 708, and cases cited.

■ The general rule of nonliability of a county for damages while engaged in the exercise of a governmental function is subject to an exception where the county creates a nuisance to the special injury of the citizens; and for such act the county is liable as a private individual in damages. Pierce v. Gibson County, 107 Tenn., 224, 64 S. W., 33, 55 L. R. A., 477, 89 Am. St. Rep., 946;

Love v. Nashville Agricultural, etc., Institute 146 Tenn., 550, 243 S. W., 304, 23 A. L. R., 887; Chandler v. Davidson County, 142 Tenn., 265, 218 S. W., 222, 224. The creation of a nuisance is not an attribute of sovereignty.

It is shown without dispute that the steam shovel was being transported to another place for use in construction or repair of a highway belonging to the county. After instructing the jury that the county is not liable for the negligent acts of its servants and officers when engaged in constructing or repairing roads, because this involves a discretion whether or not the said roads should be constructed or repaired, the trial judge told the jury that if they should find that the deceased came to his death while the county was engaged in the business of constructing or repairing a public highway calling for such discretion and judgment, or if at the time of the fatal accident the county was engaged in an act so closely connected with its legislative duty that they could not say whether the county was acting in a governmental capacity or not, then the defendant, Davidson county, would not be liable in this case. Thus far these instructions were proper. However, the trial judge followed these instructions with the following:

"But if you shall find that the defendant Davidson County at the time of the accident was not acting in a governmental capacity, that is to say, if you shall find that it was not completing or repairing any road, or engaged in an act so intimately connected therewith as to require governmental discretion and judgment, and that what the County was really doing at the time of the accident was a merely ministerial act, such as returning the excavator to its owner, or taking it to some other place over Highway No. 12 which everybody had a right to travel or to avoid, if they chose to do so, then the defendant Davidson County would be liable for the negligent acts of its servants, if such negligence was the sole, proximate cause of the accident complained of in this case."

Thus, his honor told the jury that in transporting the steam shovel for a purpose which was undisputed, that is, for construction or repair of a highway in another place, the county was not acting in a governmental capacity. We think that this was error In transporting the machine for the purpose of doing highway construction or repair in another place, the county was acting as an agency of the state; as an arm of the state, created, organized, and existing for civil and political purposes, particularly for the purpose of administering local general powers and policies of the state delegated by the state to the county. 15 C. J., 389; Redistricting Cases, 111 Tenn., 234, 80 S. W., 750. We think that this is true aside from the question whether or not the county was creating a nuisance. Instruction thus given had the effect of applying to an undisputed situation a rule that the county would be liable for the

proximate negligence of its servants, and it removed from consideration by the jury the engagement by the county in doing acts in a governmental capacity. This appears more clearly from an elaboration of these instructions given by the trial judge to the jury after the jury had announced to the court its inability to agree upon a verdict, and after being requested by the jury for further instructions. The court then instructed the jury, in substance, as follows:

"While the County would not be liable for any negligence of its servants and agents while performing its regular duties, while building or repairing a road, which was a governmental function, yet after finishing that road and going to some other place, either bringing the excavator home or returning it to its owner—they had rented it—or taking it to any other place in that space of time, where the County was moving the machinery from one place to another, it is no longer protected by this governmental function. It is just like anybody else who had a right to travel that road."

The only reasonable inference that can be drawn from the undisputed fact as to the purpose of the transportation is that it was a necessary part of the work for the construction or repair of a highway. It was so intimately and necessarily connected with such construction or repair that no logical conclusion could be reached that the county was not engaged in a governmental capacity. The discretion and judgment of the county in having determined upon the construction or repair at another place and the use of the steam shovel for that purpose cannot be questioned. Certainly the governmental agency or capacity does not begin to exist just when the place of work is reached on the highway and the machinery necessary therefor is already assembled at that place.

We now take up the question whether or not the transportation of the machine over the highway and onto the bridge constituted a nuisance. In 46 C. J., 812, the rules are stated, supported by authorities, that the question as to what constitutes a nuisance is one of law for the court; but it is for the jury to decide whether a particular act or construction or use of property, which is not a nuisance per se, is a nuisance in fact. The term, nuisance, in legal parlance, has a very broad and elastic signification. What is a nuisance must after all be determined upon the facts shown in any particular case. In the case before us, the theories of nuisance and negligence are so closely woven together in the pleadings and in the argument that it is difficult after all to determine which is the gravaman of the action. Both theories are relied upon and neither is wholly separate from the other. In behalf of the defendant in error the theory of nuisance is very much emphasized because of the endeavor to bring the case within the rule that a county may be liable for creating a nuisance, though not liable for the negli-

gence of its servants when it is acting in a governmental capacity. In Lee v. Davidson County, 158 Tenn., 313, 13 S. W. (2d), 328, the court itself determined from the declaration alone that the situation on a highway therein described did not constitute a nuisance. The county and its agents while repairing a highway made such use of a tank or vat and motor trucks and certain attachments in the heating and distribution on the roadway of tar products as to cloud the highway with smoke and obstruct free passage of vehicles. The plaintiff in that case, approaching in his automobile, was given no warning of the dangerous condition thus created, and being suddenly enveloped in said smoke, conceiving himself to be in peril, sprang from his car upon and into the heated tar and was injured. In the declaration it was charged that the county had thus created a nuisance, but it is said in the opinion that the evident purpose of the learned pleader by this charge, which appeared to be a deduction or conclusion of the pleader, was to escape the well-established rule of nonliability of a county for injuries caused by negligence in the construction and maintenance of public highways.

In the leading case of Chandler v. Davidson County, supra, it was likewise determined by the court without regard to the question whether or not the jury could conclude from the facts that the condition created by the county causing the injury to the plaintiff was a nuisance. The court found as a fact that the condition described therein was a nuisance. It consisted of the construction and maintenance of a ditch by the side of a highway of the county and into which the plaintiff fell and was injured. The determining fact is shown in the following quotation from the opinion:

"In this case the nuisance consists of the construction and maintenance of the ditch, and not of building the pike. Building the pike is one of the corporate functions of defendant, and is authorized by statute. Constructing the ditch so as to obstruct the ingress and egress of plaintiff to the premises of her host, and maintaining the ditch as it was maintained, is the actionable nuisance from which plaintiff has a cause of action."

In the instant case the following facts shown in the record are stated in the brief of counsel as justifying a conclusion that the county created a nuisance:

"The excavating machine weighed forty thousand pounds. It was loaded upon a trailer weighing ten thousand pounds. This weight was confined to an area of fourteen feet by fifteen feet. The trailer was pulled by two trucks, one directly in front of the other. The trailer was fourteen feet wide. The manufacturer's prescribed rate of speed for the excavating machine was one and one-half miles per hour. This is necessary for safety on account of its weight. The defendant was moving at the rate of ten miles per hour. By careful planning it was prepared by defendant to move at the rate

of ten miles per hour, or more than five times the manufacturer's rate of speed. It was an extraordinary method, or instrumentality. It had been in use slightly over a year when the accident occurred. Theretofore the county had used lighter machinery, weighing less than ten tons. Such light machines were used in the road building era of 1929-30, when nearly all of the main roads were constructed.

"The bridge in question was defective and known to be so by the county, which knowledge was not disclosed to the deceased. The machine was not being used on highway No. 12, where the accident happened, but was merely being transported over same."

It would seem that the contention is that the mere transportation of this machine loaded upon a trailer over the highway was a nuisance. There is no evidence that there was any other road, or equally suitable road, over which the machine could be transported. It was necessary to move it from one place to the other over some road. It could have been operated upon its own power on its "caterpillars," but the evidence shows that it could not operate thus at a rate of much more than about one mile per hour. The disaster of breaking through the bridge was not caused by the rate of speed but by the weight of the steam shovel and the trailer upon a bridge insufficiently strong. About one week before the accident it had been carried over this bridge without any harm. To hold that the county could not lawfully thus transport this machine would be to impair or even paralyze the exercise of a governmental function. The breaking of the bridge and the death of the young man indeed constituted a calamity, but we are unable to hold that this transportation of this machine. bringing it thus upon the bridge, was a nuisance for which the county should be held liable.

The insistence that this transportation resulting in this accident constituted a nuisance because it was in violation of the prohibitions of chapter 130 of the Public Acts of 1925 cannot be sustained; for even if section 6 of said act. excluding Davidson as well as other counties from the operation thereof, is unconstitutional, the consequences of violation of the act are not applicable to Davidson county. The excessive loading of the trailer would not be a nuisance. It did not violate public rights producing a common injury. It was not by the statute declared to be a nuisance. The county had a right to rely upon the constitutionality of section 6 of the statute excluding Davidson county from its operation. Woodfin v. Insel. 13 Tenn. App., 493. There is no evidence that the county intended to violate any statute in thus transporting the trailer with the machine loaded upon it.

We have thus treated this question of constitutionality of the aforesaid excluding section of said statute as immaterial. Therefore, we hold that the second count of the declaration presents no

54

cause of action based upon an alleged violation of the statute. Of course, if we deemed this question of constitutionality as vital and material, we would not undertake to adjudicate it, for we have no jurisdiction over it. Code, Sec. 10618.

The assignments of error involving the propositions which we have upheld in the course of this opinion are sustained. We hold that the material, determinative evidence is undisputed, and that it warrants only the conclusion that the county was not guilty of creating or maintaining a nuisance in the acts complained of, that it was engaged in the exercise of governmental functions, and that it is not liable for the unfortunate death of this young man. The motion for a directed verdict in behalf of the county should have been sustained. The judgment of the circuit court is reversed, the verdict set aside, and the action is dismissed at the cost of the defendant in error.

Faw, P. J., and Crownover, J., concur.