Dudley P. JONES and Thelma Jones, d/b/a Dairy King; Oliver Pass, d/b/a Kopy-Kat Printers; Dudley E. Blair, Plaintiffs-Appellees,

v.

The L & N RAILROAD CO., et al., Defendants,

and

State of Tennessee, Defendant-Appellant.

Court of Appeals of Tennessee, Middle Section.

March 16, 1981.

Permission to Appeal Denied by Supreme Court May 26, 1981.

Abridged Opinion June 17, 1981.

Crawford, Ozment & Bolin by Elliott Ozment, Nashville, for plaintiffs-appellees.

Donald Schwendimann & Don Corlew, Asst. Attys. Gen., Nashville, for defendant-appellant.

Dobson, Harris, Robinson & Aden by Tyree B. Harris, Peter H. Curry, Howell & Fisher by John Branham, Nashville, McKinney & Everett by James McKinney and James Everett, Madison, Charles W. Bone, Gallatin, for defendant.

## ABRIDGED OPINION

TODD, Presiding Judge.

(With the concurrence of participating judges, the original opinion has been abridged for publication.)

This is an extraordinary appeal by one of the defendants, The State of Tennessee, from an order of the Chancellor overruling the motion of the State to dismiss on grounds of sovereign immunity.

The plaintiffs, owners or lessees of property in the vicinity of Seven Mile Creek and Mill Creek in Davidson County, sued the Louisville and Nashville Railroad Company, John T. Dugger, Jr., and Thomas K. Sanders d/b/a Space Park Company, Hardaway Construction Company, Inc., The State of Tennessee and Metropolitan Government of Nashville and Davidson County, Tennessee, for damages and abatement of a nuisance consisting of obstruction of flow of said creeks.

The complaint alleged wrongful acts by each of the defendants. As to the State, the allegations are construction, ownership and maintenance of Thompson Lane, Murfreesboro Pike, Interstate 24 and Nolensville Pike, including bridges across Mill Creek and appurtenant approaches which obstruct the flow of Mill Creek, a navigable stream, and cause flooding of plaintiffs' property. Plaintiffs specific complaints are:

1. Too small bridge opening.
2. Obstruction by piers or tents.
3. Skewed piers.
4. Too high approach fills.

The State moved to dismiss on the ground of failure to state a claim upon which relief can be granted against the State and lack of jurisdiction of the Court over the subject matter of the complaint against the State.

The Chancellor filed no written opinion but overruled the State's motion to dismiss.

On appeal, the State submits a single issue as follows:

... whether an action against the State of Tennessee ... based on a public nuisance theory and which asks for compensatory and exemplary damages against the State and for the abatement of the alleged public nuisances, is an exception to the bar of the State's sovereign immunity.

Plaintiffs do not deny the general rule of sovereign immunity but assert that this case comes within an exception to the rule.

Plaintiffs first cite *West Park Shopping Center, Inc. v. Masheter*, 6 Ohio St.2d 142, 35 Ohio Ops.2d 216, 216 N.E.2d 761 (1966). In that case, plaintiff sued to quiet title to a tract of land in which, it was alleged, the state claimed an interest. The property had been conveyed to the state for park purposes with a reverter clause in event of non user. On January 14, 1963, the retiring Director of Highways recorded an instrument of abandonment; and, on January 25, 1963, his successor recorded a rescission of the abandonment. The lower courts granted relief to the plaintiff, but the Supreme Court reversed and dismissed, stating:

... the lack of jurisdiction of the courts of the state of Ohio to quiet title against the state is clear. Nor does the fact that the Director of Highways is the nominal defendant give a court jurisdiction not present in cases where the suit against the sovereign is without its consent. Nor will construing the action to be one for the declaratory judgment correct the total defect. (216 N.E.2d at 763.)

There is not a syllable in the opinion of the Court to support the annotator's headnote # 3 which states:

3. *Nuisance*

Injunction will lie against sovereign for creating or maintaining a nuisance. (216 N.E.2d at 761.)

However, a footnote on page 763 refers to 81 C.J.S., *States,* § 216c, p. 1320, *Wayman v. Board of Education*, 5 Ohio St.2d 248, 215 N.E.2d 394, and 52 A.L.R.2d 1134. These authorities will be discussed hereafter.

Plaintiffs next cite *DeGarmo v. Alcoa*, 332 F.2d 403 (6 Cir. 1964). This was a suit against a city for personal injuries from burning oil spilled from a "smudge pot" used as a warning flare on a drainage construction project. The appellate court affirmed judgment for the plaintiff and said:

... In Tennessee, when a municipal corporation is engaged in a proprietary function it can be liable in damages for the negligence of its employees; when it is acting in a governmental capacity, however, it is immune from liability for the negligence of its employees, but may be liable for acts which constitute a nuisance. (citing authorities). 332 F.2d at 404.

Plaintiffs next cite *Buckeye Union Fire Insurance Company v. State*, 383 Mich. 630, 178 N.W.2d 476, 477 (1970). In May, 1961, the state purchased a delapidated warehouse at tax sale. In April, 1963, while equity of redemption remained, the building burned and the fire destroyed other nearby buildings. Insurers sued the state under subrogation rights for loss of the nearby

buildings. The lower courts denied recovery, but the Supreme Court reversed and said:

So far as the State itself is concerned, the doctrine of sovereign immunity as it presently exists in Michigan is a creature of the legislature. The doctrine had been modified by the legislature, abolished by the legislature, re-established by the legislature, and further modified by the legislature.

. . . .

■ There is no sovereign immunity applicable to a situation of nuisance as we have in this case. 178 N.W.2d at 482, 483.

Plaintiffs next cite *Gerzeski v. State*, 403 Mich. 149, 268 N.W.2d 525 (1978), wherein the Michigan Supreme Court affirmed a court of claims award for death by drowning when ice broke on a pond formed in a "borrow pit" created by the state. The three-judge opinion states:

To hold the government immune from the consequences of its intentional acts which create a nuisance would be, as posited in his dissent by the Court of Appeals Judge Thomas M. Burns, unconscionable.

. . . .

■ Accordingly, the bar of governmental immunity is inapplicable when a trier of fact determines as in this case, that the alleged nuisance was intentional, i. e., that the governmental agency intended to bring about the conditions which are in fact found to be a nuisance. (268 N.W.2d at 529, 530.)

The opinion cites no authority for the test just quoted.

Plaintiffs next cite *Morash v. Commonwealth*, 363 Mass. 612, 296 N.E.2d 461 (1973), wherein a property owner sued the state for pollution of the water supply of the property from seepage from salt stored on state property. The Trial Court dismissed, but the Supreme Court reversed and remanded for ascertainment of damages and said:

■ Since sovereign immunity is a judicially created common law concept, we reject the assumption of the *Troy*

*[Troy & G. R. Co. v. Com.]* case, *supra*, 127 Mass. 43, and the *Murdock Parlor [Murdock Parlor Grate Co. v. Commonwealth]*, case, *supra*, 152 Mass. 28 [24 N.E. 854], that the consent of the Commonwealth to suit may be derived only from the Legislature. . . .

■ 2. We agree with the corporation's second argument that municipalities of Massachusetts are liable for private nuisances and there is no logical reason why the Commonwealth should not be similarly liable. Municipal liability for private nuisances arises from a court made exception to the rule of governmental immunity, . . .

. . . .

The doctrine of sovereign immunity upon which the Commonwealth relies was likewise court made. . . . 296 N.E.2d at 463.

In *Carroll v. Kittle*, 203 Kan. 841, 457 P.2d 21 (1969), cited by plaintiffs, a patient sued a state hospital for negligence. The Trial Court dismissed. The Supreme Court reversed, held that the proprietary agencies of the state were not subject to sovereign immunity from tort liability, and said:

■ The governmental immunity doctrine has judicial origin in this state. Our constitution does not touch on the subject and the legislature adopted no general rules but rather left the matter to the courts for a determination of policy. . . .

■ After careful consideration a majority of the court is now of the opinion that it is appropriate for this court to abolish governmental immunity for negligence, when the state or its governmental agencies are engaged in proprietary activities, in the absence of the legislature's failure to adopt corrective measures. 457 P.2d at 27.

In *Woods v. Kansas Turnpike Authority*, 205 Kan. 770, 472 P.2d 219 (1970), cited by plaintiffs, there was a suit for personal injuries resulting from spreading loose gravel upon the road. The Kansas Supreme Court affirmed dismissal and said:

... The legislature in clear and unambiguous language has declared the Kansas turnpike authority immune from liability or implied contract or for negligence or any other tort, which would include nuisance, except as provided by statute. The law as it now stands remains in harmony with our earlier turnpike cases, namely, that the authority is immune from tort liability except to the extent such immunity is waived by statute. (K.S.A. 68–2015.)

... We therefore decline to engraft solely for plaintiff's benefit the nuisance exception to the immunity previously accorded the Kansas turnpike authority under our law as it existed prior to *Carroll.* 472 P.2d at 222.

In *Wayman v. Board of Education,* 5 Ohio St. 248, 215 N.E.2d 394 (1966), cited in the footnote of *West Park Shopping Center v. Masheter, supra,* there was a suit to enjoin a nuisance consisting of a negligently and unskillfully created and maintained parking lot. The trial judge sustained a demurrer. The Supreme Court reversed the trial court and said:

█ In conclusion, we hold only that where a board of education creates or maintains a nuisance upon its property in such a manner that the property of another is endangered or damaged, the person so threatened may bring a suit in equity for an injunction to restrain the nuisance. In so doing he will state a good cause of action. 215 N.E.2d at 397.

81 C.J.S. *States* § 216c, p. 1320, cited in the above footnote is now 81A C.J.S. *States* §§ 303–307, pp. 970 ff. The text of § 304 is as follows:

*Suit to compel performance of legal duties.* Generally, where the purpose of a suit is to require officers and agents of the state to perform their duties, no immunity from suit is recognized. More specifically, a suit against a state officer or agency to compel by mandamus, or similar process, the performance of official duties of a purely ministerial nature, involving the exercise of no discretion or political or governmental power, is not a suit against the state and may be maintained without its consent. If, however, the duties in question involve the exercise of official discretion, or of political or governmental power, so that to compel the officer is to compel the state, the suit is in effect one against the state and cannot be maintained without its consent. It has also been held that in actions brought against the various agencies of the state or the heads thereof to compel the performance of official duties, the state is the real party in interest and is bound by the judgment, even though the action is construed as not being one against the state.

b. *Particular Officers and Agencies*

Under the general principles as to what is in effect a suit against the state which cannot be maintained without its consent, discussed supra § 303, suits against particular officers or agencies held to be suits against the state include suits against an aeronautics commission, attorney general, board or department of education or commissioner of education, clerk of court, college, university, or board or regents, and commissioner of public lands or state land board. In other cases, suits have been considered to be against the state although brought against a department of health, department of public aid, department of public safety, or employees retirement system; and various actions brought against a highway or road department, or commission or commissioners thereof, have been considered to be within the scope of constitutional and statutory provisions relating to state immunity from suit except where consented to.

Other suits against particular officers or agencies held to be suits against the state include suits against the legislature of a state or its duly constituted committees, a prison system, corrections department, prison board, or penitentiary, public works and buildings department, or the director of public works, revenue department, tax commission, or revenue or tax officers, state athletic commission, thruway, turnpike and bridge authorities, and a workmen's compensation bureau.

Actions against various other miscellaneous officers or agencies have been considered to be actions against the state and hence governed by the general principles of immunity. 81A C.J.S. *States* § 304, pp. 975–978.

Cited under the above text is *A. L. Kornman Co. v. Moulton*, 210 Tenn. 491, 360 S.W.2d 30 (1962), wherein our Tennessee Supreme Court affirmed the dismissal of a suit against the State Highway Commissioner to quiet title.

Also cited under the above C.J.S. text is *Brooksbank v. Leech*, 206 Tenn. 176, 332 S.W.2d 210 (1960), wherein the Supreme Court affirmed the dismissal of a suit against the State Commissioner of Highways for the taking of property for a super highway, where the statute requires that such suits (inverse condemnation suits) and recovery therein be against the county or municipality.

The annotation in 52 A.L.R.2d 1134 cited in the footnote to *West Park Shopping Center v. Masheter, supra,* is entitled: "Public Dump as Nuisance," and is concerned entirely with public dumps as nuisances by municipalities. Since Tennessee authorities permit suits against municipalities to abate nuisances, it does not appear that the A.L.R. article adds anything to Tennessee law.

There is a clear distinction between the denial of sovereign immunity to a municipality and the denial of sovereign immunity to a state.

Municipalities are deemed to be agents or instrumentalities of the state in respect to *part* but *not all* of their functions. Where a function is deemed to be carried out as an agent of the state, the municipality enjoys the protection of sovereign immunity. *Johnson v. City of Jackson*, 194 Tenn. 20, 250 S.W.2d 1, 33 A.L.R.2d 756 (1952). This doctrine has been extended to private contractors executing state contracts. *Wood v. Foster & Creighton Co.*, 191 Tenn. 478, 235 S.W.2d 1 (1950).

However, when the municipality is *not* carrying on a governmental function, it is not the agent of the state and cannot claim the cloak of sovereign immunity. *Null v. Electric Power Bd. of Nashville*, 30 Tenn. App. 696, 210 S.W.2d 490 (1948).

The creation of a nuisance is not an attribute of sovereignty. *Davidson County v. Blackwell*, 19 Tenn.App. 47, 82 S.W.2d 872 (1934). That is to say, no one, a municipal corporation, a private corporation or an individual in the employ of the State can claim authority to create a nuisance as agent of the State. Stated in other terms, any authority entrusted by the State to a municipality, corporation or individual contains the limitation of the laws of the State and thereby excludes authority to commit unlawful acts, such as the creation of nuisances, in the name of the sovereign State.

On this theory, municipalities have uniformly been held subject to suits to abate nuisances.

Employees of the State have no more authority from the State to create or maintain a nuisance than municipalities have. The State cannot be called to account for the unauthorized act of its employee.

Upon the foregoing reasoning, this Court declines to adopt the rationale that, because municipalities are liable for nuisances, the State should also be liable.

There is another reason why the doctrine of sovereign immunity of states should not be limited to allow actions for nuisance, especially in the present case. That reason is that the flooding of land as a result of a public improvement is not deemed to be a nuisance, but a taking of private property for a public use. *Hawkins v. Dawn*, 208 Tenn. 544, 347 S.W.2d 480 (1961); *Unicoi County v. Barnett*, 181 Tenn. 565, 181 S.W.2d 865 (1943). Actions for such taking are permitted and regulated by statute. T.C.A. §§ 29–16–123, 29–16–124. The remedy so provided is the exclusive means whereby a landowner may recover for a "taking" of his property by an agency having the power of eminent domain. *Jones v. Cocke County*, 57 Tenn.App. 496, 420 S.W.2d 587 (1967); 61 Tenn.App. 555, 456 S.W.2d 665 (1970).

■ A land owner's remedy for the taking of his land for State highway purposes is against the county. *Baker v. Rose*, 165 Tenn. 543, 56 S.W.2d 732 (1933); *State Highway Department v. Mitchell's Heirs*, 142 Tenn. 58, 216 S.W. 336 (1919).

■ It is inherent in the nature of a sovereignty not to be amenable to a suit of an individual without the sovereign's consent. *Nevada v. Hall*, 440 U.S. 410, 417, 99 S.Ct. 1182, 1188, 59 L.Ed.2d 416, 424 (1979).

Suits may be brought against the state (only) in such manner and in such courts as the legislature may direct. Constitution of Tennessee, Article 1, Section 17.

■ The constitutional provision as to suits against the State is not self-executing. It is ineffective to authorize a suit against the State without enabling legislation by the General Assembly. *General Oil Co. v. Crain*, 117 Tenn. 82, 95 S.W. 824 (1906) and authorities cited therein; *State Dept. of Highways & Public Works v. Roseborough*, 17 Tenn.App. 403, 68 S.W.2d 132 (1933).

"No court in the state shall have any power, jurisdiction or authority to entertain any suit against the state, or against any officer of the state acting by authority of the state, with a view to reach the state, its treasury, funds or property, and all such suits shall be dismissed as to the state or such officers, on motion, plea, or demurrer of the law officer of the state or counsel employed for the state. T.C.A. § 20–13–102(a).

■ The rule of sovereign immunity in Tennessee is both constitutional and statutory. It is not within the power of the courts to amend it.

■ Where reasonable provision has been made by the Legislature to protect property owners from the taking of their property without due compensation, it is not within the power of the courts to devise some other method of providing compensation.

In *Cooper v. Rutherford County*, 531 S.W.2d 783 (Tenn.1975), the Supreme Court refused to abrogate the doctrine of sovereign immunity to allow recovery from a county for a defective bridge which was alleged to be a trap and a nuisance and said:

■ The theory of nuisance has been urged in the Courts of Tennessee for many years, in an effort to circumvent the bar of governmental immunity. In many of the reported cases, the conclusion that the condition of the roadway or bridge complained of constituted a trap was alleged in support of the nuisance theory.

In *Vance v. Shelby County*, 152 Tenn. 141, 273 S.W. 557 (1925), the missing bridge was alleged to be a dangerous pitfall, snare, death trap and nuisance. In *Buckholtz v. Hamilton County*, 180 Tenn. 263, 174 S.W.2d 455 (1943), an overflow of "clear" water across the highway that was said to appear innocuous but was alleged to be a death trap in support of the theory that the creation of a nuisance on the public road by the county superseded the bar of sovereign immunity.

Both *Vance* and *Buckholtz* reject the nuisance theory, as have other reported cases too numerous to mention. In short, counties, as distinguished from municipalities, have consistently avoided liability in such circumstances. (531 S.W.2d at 784.)

In summary, the law of Tennessee, as declared by the Constitution, the statutes, and judicial decisions is contrary to the authorities of other states as cited by appellant and discussed above.

The order of the Chancellor overruling the State's motion to dismiss is reversed. The State of Tennessee is dismissed as a party to this suit. Costs of the inclusion of the State as a defendant, and costs of this appeal are taxed against the plaintiffs-appellees.

The cause is remanded for further proceedings.

Reversed and remanded.

CONNER, J., and ALAN CORNELIUS, Special Judge, concur.